Good morning, Your Honors, and may it please the Court. Good morning. Garner Kropp for Plaintiff Appellant, and I'd like to reserve three minutes. Okay, watch your clock. This case has remarkable facts, but they give rise to an unremarkable Bivens claim. Just last year, the Supreme Court again announced that Bivens remains in force in established context. And Williams' case here lies in the core of Bivens' claims that the Court has preserved, a prisoner suing rank-and-file guards for individual acts of cruel and unusual punishment and unreasonable searches. Williams was recovering from hernia surgery and on a prescription diuretic when two guards interfered with his medical care in violation of the Eighth Amendment and ordered gratuitous strip searches in violation of the Fourth Amendment. This case is directly controlled by Bivens and Carlson v. Green. Those cases have never been overruled, and Williams' claims should proceed. Has Bivens ever been used in a situation like this before? Certainly, Bivens has been used in a situation like this, Your Honor. Carlson v. Green is the Court's word that a prisoner may bring a claim under the Eighth Amendment for violations of cruel and unusual punishment. And that case has been repeated as one of the core trilogy of Bivens claims that remain available to people for constitutional violations. What importance should we assign to the fact that there are grievance procedures, if you will, alternative remedies available to people like your client within the system? Isn't that a, if you will, a countervailing argument against the application of Bivens in a case like this? Your Honor is correct that the administrative remedy program is available to prisoners. But the Supreme Court has made clear that that program doesn't displace Bivens. In Porter v. Nussel, the Court said that through the Prison Litigation Reform Act, Congress has announced that the administrative remedy program is one step in a two-step process. First, the prisoner may bring a claim through the administrative grievance process. And if it's unresolved, then the Bivens claim may proceed in court. The courts that have looked at the administrative remedy program have not put it in context of the PLRA. And in the PLRA, Congress has expressed an intent to separate powers and retain Bivens claims. It has delegated to the agency the first step in the process in which prisoners may bring an administrative grievance. And the judiciary's role in that process is to hear the claim if it's unresolved in the agency. And Congress retains or has prescribed the specific steps in which that has occurred. This case doesn't pose any separation of powers concerns because Congress has already separated them. Williams here has done everything that Congress has asked. He exhausted his administrative grievances. He filed this lawsuit. He survived early screening as dictated by the PLRA. And the last step in that process is to resolve his claims in court. Do you have any cases from other circuits that would show that this is a way to proceed in a case like this? Other circuits continue to approve Bivens claims even by prisoners. After Ziegler v. Abbasi in 2017, the Sixth Circuit, in Bistrian v. Levy, approved Bivens claims by a prisoner. After Egbert, just last year, our sister circuits in the Seventh Circuit even approved a Bivens claim by a prisoner arising from the failure to treat a hernia surgery, which is the exact situation and the same malady that Williams suffered here. Well, counsel, so you're framing this now as a Carlson denial of medical care claim, but that's not how it was framed in the complaint. It was framed more as a Fourth Amendment and Eighth Amendment emotional and sexual distress and embarrassment claim, not a denial of medical care. I can understand how that framework, I mean, it's more in line with Carlson, and it's a framework that a lawyer may have come up with, but Williams didn't frame it that way, so how do we deal with that? Williams represented himself pro se at the district court, and the district court, when it reviewed his claims under the early screening process of the PLRA, characterized it as a Fourth Amendment searches claim and an Eighth Amendment cruel and unusual punishment claim. I think it's hard to read medical care out of this case. As he was recovering from hernia surgery, the guards forced him to probe his genitals at the site of the surgery. His swollen testicles bled and sept with fluid throughout the episode, and that is the context of this case. So even though Carlson dealt with it, if they were to actually provide a necessary medical procedure, in this case, the medical procedure was provided. You're just saying that the fact that the guards, what you've claimed is excessive force and cruel and unusual punishment, the fact that they did that on the site of a previous medical procedure brings that within Carlson? Is that your argument? That's the argument, Your Honor. In Carlson, the guards failed to treat a medical condition. Certainly, if guards had intentional conduct, which made the condition worse, that would fall within the same context. Or that interfered with the treatment and recovery from the surgery. That's correct, Your Honor. And in fact, appellees in their answering brief characterized Carlson as a case in which guards exacerbated the injuries of the prisoner. And certainly, the two guards in this case exacerbated Williams' injuries. So this is not a new context in your view? This is not a new context, Your Honor. And again, we noted in our Rule 28J letter that our sister circuits have approved, again, a claim by a prisoner resulting from a hernia and found that it was not a new context. Did you want to save three minutes because you're down to 2.24? Yes. Unless the Court has any further questions, I'll let opposing counsel go. Thank you very much. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, life overvault on behalf of the appellees. Just to start with the new context question, Carlson is a case about a failure to provide medical treatment. There was no allegations of a failure to provide medical treatment in this case. To the extent my colleague on the other side is placing a lot of emphasis now in the language from Estelle about interfering with medical treatment, that's, again, about the cases cited there are cases in which guards interfered by not providing treatment that a doctor had prescribed. But why isn't it the same thing to interfere? I mean, he was they removed the supportive undergarments provided by his doctor that led to him bleeding even more, and they denied him access to a bathroom, even though they knew he was on a diuretic. Why isn't that tantamount to denial of medical care? Yes, they gave him the procedure, but what's the point if they don't allow him to recover in a healthy way from the procedure? Well, so there's no allegation, Your Honor, for example, that the doctor indicated that the plaintiff here would not be subject to contraband searches during the time he was recovering from surgery. That would be an unusual sort of change to prison policies as a result, and it's very different from the situation you have in Carlson, where you have a severely asthmatic prisoner who was kept in a facility that the BOP employees and officials were fully apprised was grossly inadequate. When he suffered an asthma attack, they provided the wrong treatment that, in fact, amplified his condition and then did not provide appropriate medical treatment until he died. If they took away the treatment, I mean, do you have to die to come within Carlson? No, Your Honor. I mean, the fact that the prisoner did die as a result of the treatment there is relevant to the severe context that Carlson was facing, the other processes he had available. But, no, I mean, the point here is that there's no allegations of a failure to provide medical treatment. I realize that it was a question I asked your opposing counsel, and his response was that Williams wrote a pro se complaint and he didn't necessarily know how to fit it within the or even that he was supposed to fit it within the framework of Carlson, which arguably he could have. Well, Your Honor, it's not a question of how the complaint was framed. The point is that the new context inquiry, the Supreme Court has made extremely clear that even a modest circumstance that's still an extension, you still have to look under the Supreme Court's new framework, post-Abbasi, most recently in Egbert, where even a modest extension, the question is, is Congress better positioned than the courts to imply a damages remedy? And it is a different context when the question is not, did a doctor prescribe treatment that BOP employees are not giving to an inmate? The question is, can an inmate challenge being subject to a contraband search, which he alleges was not appropriately justified, but the gravamen of the complaint is that he should not be subject to these contraband searches that he says were unwarranted. That's a different context. Let me ask you, let's assume it's a different context. What other than the existence of administrative grievance procedures counsels against applying a Bivens action here? Just to take a step back, and then I will answer the question. I mean, obviously, Egbert is quite clear that the existence of an administrative remedy program, that alone is sufficient to foreclose extending Bivens. This is quite similar to the grievance process the Supreme Court looked to there. But it's also the case that he has additional remedies here. There is the possible availability of either a claim under state tort law or under the FTCA. Does he have a claim under state tort law? He did not bring an FTCA suit in this, an FDACA claim in this case. So there was no sort of opportunity to determine whether the defendants were acting within the scope of duty. California. I'm not sure he has a state claim. I mean, if there is not sort of a state tort law, again, if it was the kind of conduct that was not just a one-off sort of event, but a persistent conduct, there's a possibility of injunctive relief. When you're talking about, again, not the failure to provide medical treatment, but this sort of assertion that a particular contraband search was unjustified, then there are additional concerns of disruption of prison processes, given that the searches for contraband do serve a very real role in the prison system. What I struggle with is the Supreme Court, of course, is really, really, really down on expanding Bivens, except in the three areas and seemingly just in the context in which they had theretofore been approved. Then you have the situation here where you have a prisoner who represents himself pro se. We construe those pleadings liberally. On the other hand, if you take the argument of your opponent that this is not new and Bivens applies, we have hundreds of cases where prisoners have been beat up by people in their cells, stabbed in the eye, hit, all kinds of things, which if we expand this here, arguably they couldn't search them if they went into the area that had been injured. So it seems like it's a new context. But on the other hand, what do we do with the fact that this was a pro se litigant? We're supposed to construe that liberally. Does that make any difference? I don't think the pro se pleading standard makes any difference here because it's not a question of how the complaint was framed. It's a new context when, yes, the plaintiff alleges that he was recovering from surgery, but the thing to which he's objecting is not a failure to provide medical treatment. It is a search that he alleges was unwarranted. And I think in the same situation, if you have a case where what you're challenging is not the failure to provide medical treatment, which I don't think is a question of reading his complaint one way or the other, it's just that is not the thrust of what he is challenging in this case, you have a new context under the Supreme Court's approach, which makes clear that even a modest extension, you still have to consider it under the most recent case law, most recently with Egbert. Your opponent suggests that other circuits would allow such a procedure here to be filed and considered. Is that true? None of the cases my colleague identified in the 28J letter he filed, I believe last week, are at all close to this situation. He referenced, I believe it's Macias from the Fourth Circuit, where it's true that the plaintiff there alleged, among other things, that he had a hernia that he needed treatment for. But the difference from that case and this case is here, the plaintiff did receive treatment for his hernia. It was a medical problem. I'm sorry, Your Honor? You're saying that was a medical problem. That was a failure to provide medical treatment. The two other cases cited were both law enforcement officers affecting an arrest in an unreasonable way. That's obviously much closer to the context of Bivens itself. Here, the fact that the search is being challenged occurred in a BOP facility, that clearly, I think, creates a new context relative to Bivens. The one other point I would add, just on special factors, and I see him, that I do think my friend is over-reading Porter v. Nussel and the dicta in that case, that the PLRA screening requirements also apply to Bivens' actions. There's no suggestion in that decision that that reflects that Congress sort of approved a broad range of Bivens' actions. I know this Court in the since-withdrawn opinion in Hoffman had declined to read the PLRA as an additional factor counseling against reading Bivens because Congress did not expressly abrogate Bivens, abrogate Carlson in this context, but it's certainly no reason to expand Carlson to new context that the Supreme Court had not recognized. If the Court has no further questions. So basically, the question we have to deal with from the government's perspective is does this constitute a new context? If it does, you think it fails. If it doesn't, then they think they win. Is that right? That's correct, and the point I would just make is, you know, the Supreme Court has made very clear that it's a broad inquiry in new context. It's not enough to just point to superficial similarities, parallel circumstances. Egbert also talked about it. It is more than just pointing to one sort of fact in common with the previous case. All right. Thank you, Counsel. Thank you. Thank you. I'd like to raise two points in response. The first is that opposing counsel raised, questioned the validity of Porter v. Nussel in which the Court said that Bivens and the administrative remedies coexist. The normal rules of statutory construction provide that if Congress wants to do away with an existing judicial construct, they have to do so with specific intent. Congress was well aware of Bivens when they passed the PLRA, and they chose not to eliminate Bivens remedies. Does that mean that they agreed with the Supreme Court that they chose not to eliminate it as long as it's kept within the context of the then-existing cases? I think it's fair to say that Congress chose not to modify the existing Bivens doctrine, which was a two-step procedure at the time. First, it evaluated whether claims arise in a new context. If the claim does not arise in a new context, the analysis ends there. And the second step, if it does arise in a new context, then the Court evaluates special factors. And that's where, as I mentioned to your friend, what I struggle with. This is not Carlson. He was not denied a medical procedure. Indeed, it was because he had had a medical procedure where the doctor didn't say he can't be surged that created the problem in the first place. It doesn't mean what the officers did was correct, but the question is, does Bivens provide the remedy? I'm struggling to see why it is not in a new context. Help me with that. I'm sorry, Your Honor. I'm struggling to see why this case does not present a new context from Carlson. Well, I agree with you, Your Honor, that this case does not present a new context from Carlson. Justice Thomas in Egbert characterized Carlson as an inadequate care case. I think it's certainly fair to say that the two guards in this case provided inadequate care to Mr. Williams. So I'll close by saying that this is an archetypal Bivens claim. This Court doesn't need to tread any new ground to allow the claims, and I urge the Court to reverse. Thank you, counsel. I want to thank you and Fenwick and West for your pro bono representation today. We appreciate it. That means a lot, Your Honor. Thank you very much. Both sides did an excellent job. Williams v. Verna will be submitted.
judges: Siler, WARDLAW, SMITH